# White House Communications Agency Expenses Incurred on Political or Personal Travel by the President

When the White House Communications Agency accompanies the President on travel, it may (and should) use appropriated funds to pay for any expense incurred for activities in furtherance of its official mission to provide a continuous communications capability to the President and his advisors, regardless of whether the travel is for official, political, or personal purposes.

The White House Communications Agency may use appropriated funds to pay for expenses incurred in connection with the provision of communications facilities and services for the official use of the President and his staff during Presidential travel.

Appropriated funds may be expended to facilitate official, but not political, communication between the President and the press.

October 22, 1990

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This memorandum responds to your request for our opinion on which expenses of the White House Communications Agency ("WHCA"), if any, may be paid from appropriated funds when the President travels for political or other non-official purposes. We conclude for the reasons set forth below that virtually all of the activities which you have informed us that WHCA undertakes in connection with travel by the President are in furtherance of WHCA's official mission, and thus may be -- indeed, should be -- paid for out of appropriated monies, whether the President's trip is official, political, or personal in nature.[1]

## I.

WHCA is a component of the White House Military Office, responsible for providing continuous communications services to the President, his senior staff, and the Secret Service, both at the White House and during presidential travel, domestic or international. Your memorandum of March

---

[1] We addressed in two prior opinions the general question of the allocation of expenses for political trips taken by the President. *See Payment of Expenses Associated with Travel by the President and Vice President,* 6 Op. O.L C. 214 (1982) ("Olson Memorandum"); Memorandum for Robert J. Lipshutz, Counsel to the President, from John M. Harmon, Acting Assistant Attorney General, Office of Legal Counsel (Mar. 15, 1977) ("Harmon Memorandum").

28, 1990, details the principal functions performed by WHCA in connection with a routine presidential trip.[2] Approximately one week prior to a presidential visit, WHCA travels to the site, establishes staff offices, and installs telephone lines, satellite terminals, and other equipment necessary for continuous communications capability. These facilities and equipment are then used during the President's trip for communications between the President, his senior advisers, and the Secret Service, and the other departments and agencies of government and the general public. Staff telephones are generally provided "to permit staff and trip coordination." Nelson Memorandum at 2. The White House staff has been advised repeatedly, however, that it may not use WHCA communications equipment "for direct political purposes such as campaign fundraising and crowd-building." Id.

WHCA, as one of its communications functions, also arranges for the President's access to and communication with the press. One or two WHCA officers "provide services used in routine press advance work" for each site. Id. WHCA establishes an emergency press briefing center at each site for use if required.

For official presidential events, WHCA provides lighting and sound equipment. At political events, these services are procured from private sources, with WHCA merely providing technical advice. At all events, "WHCA controls the 'feed' to the sound system and shuts down power to the microphones at the appropriate conclusion of remarks." Id. WHCA furnishes a teleprompter whenever required, regardless of the nature of the event.

Certain WHCA communications functions also serve a security purpose. For instance, WHCA provies a bullet-proof podium for presidential events. WHCA also "sets up emergency public address system speakers at each site, primarily for purposes of crowd control in case of an emergency." Id.[3]

## II.

The legal principles governing payment of WHCA expenses are set forth in the Olson Memorandum. In that memorandum, we identified two "major principles" of appropriations law applicable in this and similar contexts. First, "appropriated funds may be spent only for the purposes for which they have been appropriated." Olson Memorandum at 215. Second, "in general, official activities should be paid for only from funds appropriated for such

---

[2] See Memorandum for Mike Luttig, Deputy Assistant Attorney General, Office of Legal Counsel, from Frederick D. Nelson, Associate Counsel to the President (Mar. 28, 1990) ("Nelson Memorandum").

[3] We understand that the WHCA functions detailed in this memorandum may not be exhaustive and that you may need to return to this Office for advice on the proper treatment of expenses incurred in connection with functions not identified herein.

purposes, unless Congress has authorized the support of such activities by other means." *Id.* at 216.[4]

Over the years, this Office has considered against the backdrop of these twin principles a variety of issues arising out of presidential trips on which political business is conducted.[5] We have consistently concluded with respect to these so-called "mixed" trips that while political activities must be paid for by political organizations,[6] appropriated funds must be used to pay expenses incurred in connection with the performance of official duties during presidential travel, regardless of the purpose of the travel. We have specifically noted that certain individuals are required in the performance of their official duties to accompany the President whenever he travels, and that expenses of such individuals should be paid from official sources:

> [T]here are some persons whose official duties require them to be with the President, whether or not the President himself is on official business. . . . A similar group would exist for the Vice President. Expenses incurred during travel with the President or Vice President by this group of individuals should be considered official regardless of the character of the event that may be involved in a given trip.

*Id.* at 217-18 (footnotes omitted); *see also id.* at 218, 221.

The President's military aide and doctor, for example, accompany the President on all of his travel, but we have said that their expenses should be paid from appropriated monies. *See id.* at 217-18. The official nature of the responsibilities performed by these persons does not change depending upon whether the trip is official, political, or personal. All of these persons are, when performing the duties described, engaged in the official business of the United States, and thus their expenses must be paid from public funds.

WHCA is an obvious example of a group that, like the military aide and the President's doctor, performs official responsibilities for the President when he travels, regardless of whether the travel is official, personal, or political. We have never squarely addressed whether expenses incurred in the performance of these responsibilities may be paid from appropriated

---

[4] The first principle derives from the statutory requirements of 31 U.S.C. § 1301(a). The second principle, under which the executive branch may not augment its appropriations, is asserted by the Comptroller General to be a corollary of Congress' constitutional power to control the Treasury. *See* U.S. General Accounting Office, Office of General Counsel, *Principles of Federal Appropriations Law* 5-62 to 5-63 (1st ed. 1982) (explaining the non-augmentation principle).

[5] *See, e.g.,* Memorandum for Fred F. Fielding, Counsel to the President, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel (Apr. 21, 1982); Memorandum for the Hon. Myer Feldman, Special Counsel to the President, from Norbert A. Schlei, Assistant Attorney General, Office of Legal Counsel (Aug. 20, 1964).

[6] *See, e.g.,* Memorandum for the Hon. Lloyd N. Cutler, Counsel to the President, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel (Sept. 17, 1980).

funds when the travel is for personal or political purposes, but we have always assumed that they should be. For example, we observed in 1977 that,

> [n]o reimbursement to the Government should be required, even on non-official travel, for accompanying staff and support personnel required for the President and Vice President to perform their official duties. This would include the Secret Service, military aides and support personnel, *communications personnel*, and whatever other staff the President and Vice President require for advice and assistance in transacting the public business.

Harmon Memorandum at 9 (emphasis added).[7] Now that we are directly confronted with the question, we conclude that WHCA may — and indeed should — use appropriated funds to pay for any expense incurred for activities in furtherance of its official mission when it accompanies the President on travel for either personal or political purposes.

Our conclusion that these expenses should be paid from appropriated funds is consistent with the treatment of such expenses under the Federal Election Campaign Act ("FECA"), 2 U.S.C. §§ 431-456 and the Presidential Election Campaign Fund Act ("PECFA"), 26 U.S.C. §§ 9001-9013.[8] Generally, Secret Service, WHCA, or other official expenses are not campaign "expenditures" under the FECA or "qualified campaign expenses" under the PECFA.[9]

Under the regulations promulgated pursuant to the FECA, if a candidate for federal office, other than a candidate for President or Vice President who receives federal funds under the PECFA, "uses government conveyance or accommodations for travel which is campaign-related," then the candidate must report as an "expenditure" under the FECA "the rate for comparable

---

[7] *See also* Harmon Memorandum at 15-16:
    The President and Vice President should be provided all staff and other assistance as required for support of the official responsibilities of those officers regardless of location. This would ordinarily include . . . *communications facilities for control and administration of the armed forces and other agencies of the Government*[.]
(Emphasis added).

[8] The Harmon Memorandum did not reference the Federal Election Commission ("FEC") regulations in force at the time. *See* Harmon Memorandum at 20-21. The Olson Memorandum explicitly declined to address FEC rules applicable during federal elections. Olson Memorandum at 214.

[9] The treatment of WHCA expenses under the FECA or the PECFA is not necessarily dispositive of whether such expenses may be paid from appropriations. While it likely will often be the case that official expenses properly payable from appropriations would not be campaign "expenditures" or "qualified campaign expenses" for the purposes of these Acts, and conversely that expenses that are "expenditures" or "qualified campaign expenses" within the meaning of those Acts would not be payable from appropriations, this need not be true. *See, e.g.,* 11 C F.R. § 9004.6 (1981) (Secret Service transportation paid by an authorized committee "shall be qualified campaign expenses," although to the extent that the government reimburses such expenses, they are not "expenditures" under the FECA), *amended by* 48 Fed. Reg. 31,822, 31,822 (1983) (deleting language referring to Secret Service expenses); *see discussion infra* p.150.

commercial conveyance or accommodation." 11 C.F.R. § 106.3(e) (1981).[10]
The regulations make clear, however, that expenses associated with staff and
equipment authorized by law or necessary for national security are not "ex-
penditures" reportable under this section:

> In the case of a candidate authorized by law or required by
> national security to be accompanied by staff and equipment,
> the allocable expenditures are the costs of facilities sufficient
> to accommodate the party, *less authorized or required person-
> nel and equipment.*

*Id.* (emphasis added). Accordingly, the expenses associated with such au-
thorized or required personnel are not included in calculating the amount
that must be reported as an "expenditure" under this regulation.

A similar rule applies to travel of the President when, as a participating
candidate under the PECFA, he campaigns for his own renomination or re-
election or when he is campaigning on behalf of other federal candidates.
The regulation governing presidential campaign travel during the general
presidential election campaign[11] states that

> [i]f any individual, including a candidate, uses government
> conveyance or accommodations paid for by a government en-
> tity *for campaign related travel,* the candidate's authorized
> committee shall pay the appropriate government entity an
> amount [calculated according to a specified formula].

11 C.F.R. § 9004.7(b)(5) (1981) (emphasis added).[12] Any such repayable
expenses are defined as "qualified campaign expenses" under the PECFA
and must be reported as "expenditures" under the FECA. *Id.* § 9004.7(a).
However, an individual's travel is a campaign expenditure only if *that
individual's travel* is "campaign-related."[13] Because personnel, like Secret
Service agents and WHCA employees, accompany the President for official,

---

[10] By its terms, this regulation only applies to the President when he is a candidate *and* is not participat-
ing in the public financing system of the PECFA. *See* 11 C.F.R. § 106.3(a) (1981).

[11] An identical provision governs presidential travel during the primaries. *Id.* § 9034.7(b)(5).

[12] The reimbursement formula specifies that the candidate must pay an amount equal to:
> (i) The first class commercial air fare plus the cost of other services, in the case of travel
> to a city served by a regularly scheduled commercial service; or
> (ii) The commercial charter rate plus the cost of other services, in the case of travel to a
> city not served by a regularly scheduled commercial service.

11 C.F.R. § 9034.7(b)(5) (1983).

[13] The regulation recognizes that whether or not an individual's travel with the President is "cam-
paign-related" is not dependent upon the purposes for which the President is traveling, but upon the
purposes of the particular individual's travel. Subsection (b)(4) states thàt, "[f]or trips by government
conveyance or by chapter," the candidate must make available to the FEC "a list of all passengers on
such trip, *along with a designation of which passengers are and which are not campaign related.*" 11
C.F.R. § 9004.7(b)(4) (1981) (emphasis added). *See also id* § 9034.7(b)(4) (1981) (identical provision
for primary campaign travel).

governmental purposes, their travel is not "campaign-related," and therefore is not a reimbursable "expenditure" or "qualified campaign expense" under the regulation.[14]

Similarly, under the regulation applicable to individuals, including the President, who campaign on behalf of candidates for federal office, expenses for Secret Service protection and other such personnel who travel with that individual in the performance of their official duties would not be campaign "expenditures" under the FECA. The regulation states:

> [w]here an individual, other than a candidate, conducts campaign-related activities on a trip, the portion of the trip attributed to each candidate *shall be allocated on a reasonable basis.*

11 C.F.R. § 106.3(c)(1) (1981) (emphasis added). This regulation requires an individual campaigning on behalf of another "to allocate their mixed campaign/non-campaign travel expenses on a reasonable basis." 1 *Federal Election Campaign Financing Guide* (CCH) ¶ 807, at 1537-8 (1989) (reproducing FEC "Explanation and Justification of Part 106"); Federal Election Commission, *Campaign Guide for Congressional Candidates and Committees* 21 (1988) (same comment). Under this regulation, the expenses of Secret Service or other such personnel clearly would not be considered to be an allocable portion of the President's total expenditures in making the campaign trip. Since expenses for Secret Service and other such personnel are not campaign "expenditures" under the FECA when a federal candidate campaigns for himself or herself, considering such costs to be noncampaign expenses when such an individual campaigns for someone else certainly allocates the campaign and noncampaign costs "on a reasonable basis." Furthermore. applying the regulation directly to each individual member of the President's support staff would also lead to the conclusion that no portion of

---

[14] An earlier version of this regulation included an explicit exemption for personnel authorized by law or required by national security to accompany the candidate. *See* 11 C.F.R. § 9004.7(b)(5)(iii) (1981) ("In the case of candidates authorized by law or required by national security to be accompanied by staff, such staff shall not be considered to be travelling for campaign purposes unless such staff engages in campaign activity during a trip."). There is no indication that, by deleting this sentence in the later regulation, the FEC intended for such expenses to be considered campaign "expenditures" under the FECA. The change, which was made shortly after the FEC issued comparable regulations governing presidential primary campaigns, was made primarily to conform section 9004.7 to the new primary regulations. 48 Fed. Reg. 31,822, 31,822 (1983). As explained further below, *see infra* p. *150,* the primary campaign regulations deleted references to Secret Service and other such personnel because the payment of their expenses was generally addressed under the federal travel regulations. That the FEC did not intend deletion of the reference to such personnel in section 9004.7 or its primary election counterpart, section 9034.7, to affect the treatment of Secret Service and other such expenses is evidenced by the fact that the FEC, in its explanatory comments, did not identify the change as significant; the FEC identified only *"one* significant change," namely that candidates using government conveyance were required to pay a higher rate than under the previous regulation. 48 Fed. Reg. 5224, 5229 (1983) (emphasis added) (discussing section 9034.7); *see also* 48 Fed. Reg. at 31,824 (identical comment on section 9004.7).

149

the cost of the travel of Secret Service or other such personnel need be allocated to any candidate as an expenditure. Even though they may accompany the President on a campaign trip he makes on behalf of various federal candidates, Secret Service and similar personnel do not "conduct[] campaign-related activities" when they merely perform their official responsibilities.[15]

Secret Service and other such personnel expenses thus have consistently been considered not to be "expenditures" under the FECA, and generally have been considered not to be "qualified campaign expenses" under the PECFA. We are aware of only one regulation under which expenses for Secret Service agents and other such personnel would have been considered to be "qualified campaign expenses" under the PECFA. Under a previous version of 11 C.F.R. § 9004.6 (1981), expenses incurred by an authorized committee of a participating presidential candidate for transportation and ground services provided to "Secret Service or other staff authorized by law or required by national security" were considered to be "qualified campaign expenses." *See* 11 C.F.R. § 9004.6(a) (1981). This regulation, however, simply allowed Secret Service travel and similar expenses, when incurred by the authorized committee, to be paid from federal funds received under the PECFA; it did *not* require committees to treat these expenses as campaign "expenditures" under the FECA. The regulation, which permitted an authorized committee to receive reimbursement for such expenses up to an established limit, *id.* required the committee to report such reimbursements only as "[o]ffsets to operating expenditures" under 11 C.F.R. § 104.3(a)(3)(ix) (1981). *See id.* § 9004.6(c). The FEC comments explaining this provision made clear that these offsets were not "expenditures" for purposes of the presidential spending limit in the FECA, 2 U.S.C. § 441a(b). *See* 45 Fed. Reg. 43,371, 43,376 (1980) ("Pursuant to Part 104, the reimbursements will be subtracted from the committee's total expenditures to produce the committee's net expenditures. It is the net expenditures which will count against the candidate's expenditure limit.").

The classification of such costs as "qualified campaign expenses" was of little practical significance. The regulation by its terms did not apply where *the government* provided the transportation for these individuals and where, under section 9004.7(b)(5), the committee incurred no costs for such transportation. It applied only when "*an authorized committee* incur[red] expenses for transportation made available [to such persons]," 11 C.F.R. § 9004.6(a) (1981) (emphasis added). However, when a committee had paid the travel expenses of Secret Service agents or other such personnel and the regulation therefore applied, the committee's expenses were generally reimbursable under regulations providing for government reimbursement of employees who travel on official business. *See* 41 C.F.R. ch. 301 (1990). Accordingly, in

---

[15] Of course, were such personnel to perform any campaign function distinct from their official functions, they would be required to allocate their mixed campaign/non-campaign travel expenses on a reasonable basis.

most situations, the regulation was either inapplicable or irrelevant. It was apparently for this reason that the FEC deleted as superfluous the reference to such personnel when it revised this regulation.[16] Because of this deletion, such expenses would not in any event be considered "qualified campaign expenses" under the current regulations. Furthermore, and more significant, nothing in the current or previous FEC regulations governing presidential campaign expenses would require that expenses for Secret Service and other such personnel be classified as "expenditures" under the FECA.

In sum, we adhere to the conclusion of the Olson and Harmon Memoranda that expenses incurred for official purposes during travel with the President should be paid from appropriated funds, even if the purpose for the President's trip is not official. Accordingly, expenses incurred by WHCA for services in furtherance of its official mission that are performed in connection with presidential travel should be paid from appropriated funds.

## III.

We now turn to the question of whether the particular WHCA functions described in your memorandum further the agency's official mission. The resolution of this question ultimately turns on whether the funds used to pay WHCA's expenses are being used for the purposes for which they were provided by Congress.

Congress has not detailed the purposes for which funds appropriated for WHCA may be used.[17] WHCA officials therefore have a substantial measure of discretion in defining the precise scope of the agency's official mission, and whether a given expenditure is an authorized use of the funds appropriated by Congress is in the first instance a question for those officials. An expenditure, however, of course must be reasonably related to the official mission of the agency.

The primary responsibilities of WHCA during presidential travel are to install, maintain, and operate the communications facilities and equipment that permit the President and his entourage to have continuous communications capabilities, and the lion's share of expenses incurred by WHCA during

---

[16] The reference was deleted from section 9004.6 in order to conform to the corresponding primary campaign regulation, 11 C.F.R. § 9034 6. *See* 48 Fed Reg. 31,822 (1983). The FEC explained that it deleted the reference to travel expenses of Secret Service and other such personnel from the primary campaign regulation because "other government regulations govern payment for those expenditures." 48 Fed Reg. at 5229 (discussing section 9034.6); 48 Fed. Reg. at 31,824 (identical comment on section 9004.6).

[17] You have informed us that WHCA's expenses are paid from accounts of the Defense Communications Agency ("DCA"), one of the "Defense Agencies" included in the annual Department of Defense appropriations legislation. *See generally* National Defense Authorization Act for Fiscal Years 1990 and 1991, Pub. L. No. 101-189, §§ 104, 201, 301, 2401-2422, 103 Stat. 1352, 1370, 1393, 1407, 1639-44 (1989) (the "Authorization Act"); Department of Defense Appropriations Act, 1990, Pub. L. No. 101-165, 103 Stat. 1112, 1116, 1124, 1126 (1989) (the "Appropriations Act"). The Authorization Act and the Appropriations Act do not provide specific directions concerning the use of appropriated funds for WHCA expenses, and we are aware of no relevant limitation on the use of Defense Agencies appropriations.

and in connection with presidential travel are associated with the discharge of these responsibilities. As Commander in Chief, as well as in his other official roles, the President requires dependable means by which to communicate instantly with individuals anywhere in the world at any moment. In an age when conflict may develop and escalate to crisis proportions in minutes, the President cannot be expected to rely on unpredictable and variable private communications facilities. Indeed, it was precisely to eliminate the need for reliance upon such non-governmental facilities that WHCA was created.

The provision of these communications facilities and services for the official use of the President and his staff is WHCA's official mission. Therefore, provided that these facilities and services are used for official government purposes, WHCA may expend appropriated funds to pay for the expenses incurred in connection with the provision of such facilities and services, regardless where and for what reason the President travels.[18]

WHCA also provides facilities and services for communication with the media. We believe that funds appropriated for WHCA's use may also permissibly be expended to facilitate official, as distinguished from political, communication between the President and the press. The press is indispensable to the effective and proper functioning of the presidency -- indeed to government as a whole. As Commander in Chief and in his other official roles, the President must communicate with the public. Such communication may on occasion even be necessary for reasons of national defense. Direct communication with the public is, as a practical matter, only possible with the assistance of private news media. Facilitation of such contact thus furthers important governmental interests, regardless of the purpose for which the President may be traveling.[19]

---

[18] The responsibilities and duties performed by the President and those serving the President cannot always be satisfactorily characterized as wholly "official," "political," or "personal." We noted, for example, in the Olson Memorandum:

> [I]t is simply not possible to divide many of the actions of the President and Vice President into utterly official or purely political categories. To attempt to do so in most cases would ignore the nature of our political system and the structure of our government. Accordingly, efforts to establish such divisions must be approached with common sense and a good faith effort to apply the spirit of the principles we discuss in this memorandum, and they must be judged with considerable deference to the decisions of the persons directly involved in making the determinations.

Olson Memorandum at 215.

Thus, there will always be particular instances when it will not be evident (and certainly not in advance) whether use of a WHCA facility will be in furtherance of the President's official, as distinguished from his political, responsibilities. For example, a presidential aide who returns a reporter's telephone call will not know until the conversation is over whether the reporter is interested in political or official matters, or both. We believe that even when it eventuates that the reporter's inquiry relates more to the President's political than to his official responsibilities, WHCA may pay for such *de minimis* use of its facilities, and that special logs need not be maintained nor other monitoring methods employed. We have repeatedly emphasized that common sense must be the touchstone in many of the particular applications of the broadly drawn rules in this area.

[19] There will no doubt be occasions when there are additional costs for press or other third-party communications beyond those ordinarily associated with the President's travel. If the costs are incurred for items or services that are attributable to the special needs and/or requests of such third parties, WHCA should seek reimbursement from the third parties.

152

The same governmental interests are served by the incidental security functions performed by WHCA, such as provision of a bullet-proof podium or an emergency sound system. Danger to the President's life does not vary depending on the purpose of a public appearance.[20] Appropriated monies therefore may be used to pay the expenses associated with these services as well.

## CONCLUSION

We conclude that virtually all of the functions that you have informed us are performed by WHCA in connection with presidential travel are in furtherance of WHCA's official mission to provide a continuous communications capability to the President and his advisers. As a consequence, the expenses incurred for these activities may be paid with appropriated funds, regardless of whether the travel is for official, political, or personal purposes.

J. MICHAEL LUTTIG
*Assistant Attorney General*
*Office of Legal Counsel*

---

[20] The official purpose behind two other WHCA activities — controlling the "feed" to the sound system (including turning off the microphones at the end of a speech) and furnishing a teleprompter whenever required — is not as easily discernible. We simply have not been provided sufficient information concerning the purposes for having WHCA perform these functions to enable us to conclude whether they may be paid for with appropriated funds.